UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**CIVIL ACTION NO. 12-069-JBC**

**CITIZENS COMMERCE NATIONAL BANK,**                              **APPELLANT,**

**V.**                  <u>**MEMORANDUM OPINION AND ORDER**</u>

**REPUBLIC BANK & TRUST COMPANY,**                             **APPELLEE.**

\* \* \* \* \* \* \* \* \*

      This matter is before the court on the appeal by Citizens Commerce National Bank ("CCNB") of a judgment by the United States Bankruptcy Court for the Eastern District of Kentucky in favor of Republic Bank & Trust Company, which held that a future advance clause contained in Republic's mortgage on a property secures certain additional indebtedness and which awarded Republic certain attorneys' fees and costs. Because the future advance clause is valid under Kentucky law, and the costs and fees awarded below are therefore justified, the court will affirm the Bankruptcy Court's rulings.

      The debtors, Donald and Lorea Ware, executed a note in the principal amount of $129,225.00 with Republic on January 29, 1997, secured by a mortgage on 1133 Shagbark Lane in Lexington, Kentucky. On March 28, 2008, the Wares executed a note in the principal amount of $130,000.00 with CCNB that was secured by a second mortgage on the same property. The Republic Shagbark mortgage is first in priority. The Wares also owned a property at 547 Gingermill Lane, upon which they executed a note secured by a first mortgage with

Republic on June 11, 1997, and a home equity line of credit secured by a second mortgage with Republic on May 27, 2005.  After the Wares' bankruptcy, the Gingermill property was sold and the proceeds were applied to the two Republic mortgages, paying the first in full and leaving a deficiency balance of $272,243.53 on the second.  The Shagbark property was sold by the order of the Bankruptcy Court and the net proceeds of $160,425.37 were deposited into an escrow account held by CCNB.  That court ordered $88,495.08 of the sale proceeds disbursed to Republic to satisfy the principal of the original mortgage, plus interest, advancements, and attorney fees.  Republic asserted claims against the remainder of the Shagbark proceeds based on the outstanding debt from the Gingermill property, and CCNB initiated an adversary proceeding, No. 11-05049-tnw, to protect its interest in the remaining proceeds.  The Bankruptcy Court granted summary judgment in favor of Republic and denied CCNB's motion to reconsider.

The issues in this appeal are: (1) whether Republic is entitled to further sales proceeds from the Shagbark property to satisfy the outstanding debt from the Gingermill mortgage that Republic contends is secured under the future advance clause of its Shagbark mortgage; and (2) whether Republic is entitled to the attorneys' fees awarded by the Bankruptcy Court.

Republic is so entitled because the future advance clause in the Republic Shagbark mortgage is valid to secure additional indebtedness up to the amount of the original mortgage.  The Republic Shagbark mortgage addresses the possibility of additional advances as follows:

> **19. Additional Advances.** Prior to release of this mortgage, Mortgagee, at its option, may make additional advances to Mortgagor. Such additional advances, with interest thereon, shall be secured by this mortgage unless Mortgagee expressly waives such security . . . . At no time shall the principal amount of the indebtedness secured by this mortgage, not including sums advanced in accordance herewith to protect the security of this mortgage, exceed the original amount of the Note, plus $_____. All additional advances secured by this mortgage shall be due and payable on or before the Final Maturity Date of the Note, or such time as demand for payment may be made by Mortgagee.

R 1-4 at 4. KY. REV. STAT. § 382.520(2) provides that a mortgage "may secure any additional indebtedness, whether direct, indirect, existing, future, contingent, or otherwise, to the extent expressly authorized by the mortgage, if the mortgage by its terms stipulates the maximum additional indebtedness which may be secured thereby." Here, the mortgage provides for additional advances up to the amount of the note, plus a blank field. CCNB contends, without supporting authority, that the failure of the parties to insert a value into this field invalidates the entire future advance clause, but such a result would be contrary to the terms of the mortgage. The mortgage contract is not ambiguous – the intent of the parties, as expressed in the mortgage, was that the mortgage should secure up to a certain amount of additional indebtedness. Because the mortgage agreement is unambiguous as to that intent, the extrinsic evidence of intent offered by CCNB is not relevant. Had the parties intended the mortgage to secure only the note on the Shagbark property, this section could have been omitted or stricken from the document; instead, it was included with a blank field.

For a future advance clause to be valid under KRS § 382.520(2), the amount of additional indebtedness must be "described with reasonable certainty. If the nature and amount of the encumbrance is so described that it may be ascertained by the exercise of ordinary discretion and diligence, that is all that is required." *Bank of Maysville v. Brock*, 375 S.W.2d 814 (Ky. 1964). As the amount of maximum encumbrance may be ascertained from the face of the mortgage – the original amount of the mortgage, plus $0, or $129,225.00 – the future advance clause in the Republic Shagbark mortgage is valid to secure additional advances from Republic to the Wares of up to $129,225.00 of total indebtedness. KRS § 382.520 does not specify that only debts of a certain character may be secured by a future advance clause; the fact that the second Gingermill mortgage is a line-of-credit mortgage is therefore not material or dispositive, nor is it material or dispositive that the Gingermill mortgages were separately secured. *See First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 837 (Ky. Ct. App. 2000).

This future advance clause is not invalidated by KRS § 382.380. That statute requires only that when other obligations are issued that are secured by an existing mortgage, a statement setting forth the "amount, date and maturity and description of the additional indebtedness" need also record such obligations in the county where the original mortgage was recorded. This statute does not require these descriptions to be appended to the original mortgage, and as the parties have

not asserted that the other mortgages were not properly recorded, KRS § 382.380 is immaterial to the case at hand.

Furthermore, the Republic Shagbark mortgage's future advance clause is not barred by KRS § 382.385(2). This statute provides requirements for mortgages that provide a line of credit or revolving credit plan. The primary difference between such a mortgage and a mortgage with a future advance clause under § 382.520 is that a mortgage under § 382.385 need not be automatically released upon reaching a zero balance. The revolving credit plan statute is "not exclusive and shall not prohibit the use of other types of mortgages or other instruments given for the purpose of creating a lien on real property permitted by law." KRS § 382.385(7). This language, when viewed in combination with the permissive "may" used in subsection (2), provides that there are other methods for creating mortgage liens that secure more than just the original indebtedness. *See Cook v. Springfield State Bank*, No. 2004-CA-001225-MR, 2005 WL 1186532, at *2 (Ky. Ct. App. May 20, 2005); *Hatten v. First Nat'l Bank of Grayson*, No. 2003-CA-002731-MR, 2005 WL 1056627, at *3 (Ky. Ct. App. May 6, 2005). Finally, subsection (6) of the statute specifically provides that the provisions of KRS § 382.520 "shall not be applicable to the mortgage referred to in subsection (2)," which indicates that the Kentucky legislature meant the two to co-exist as alternative means of accomplishing similar, but not identical, goals. Thus, KRS § 382.385 provides no ground for invalidating the Republic Shagbark mortgage's

future advance clause.  Because the future advance clause is therefore valid, Republic is entitled to further proceeds from the sale of the Shagbark property.

CCNB also appealed the Bankruptcy Court's award of attorneys' fees, arguing that Republic was not entitled to such an award because its defense in the adversary proceeding was based on an untenable argument.  As the court has found in favor of Republic on the issue of whether it is entitled to further proceeds from the Shagbark sale, it follows that Republic's attorneys' fees in arguing this position are justified.  Such fees are secured by the Republic Shagbark mortgage in paragraph 15, which provides that "[a]ny amounts expended or incurred by Mortgagee to protect the security of this mortgage, including without limitation amounts expended or incurred by Mortgagee in exercise of its rights hereunder, are to be reimbursed to Mortgagee by Mortgagor and shall become additional debt secured hereby . . . ."  R. 1-4 at 4.   Thus, though Republic is indeed seeking to obtain the remainder of the Shagbark sale proceeds to satisfy its claims against the Gingermill property, those claims are properly related to its Shagbark mortgage under its future advance clause, and are therefore justified. The Bankruptcy Court found that "[a]ll the fees and costs Republic seeks to recover as set forth in Republic's counsel's affidavit are directly related to Republic's protection of the Republic Shagbark mortgage." R 1-4 at 9.  Because CCNV has not shown this factual assessment to be clearly erroneous, *see Stamper v. United States of America*, 360 F.3d 551, 556 (6th Cir. 2004), Republic is entitled to the attorneys' fees awarded by the Bankruptcy Court.  As such fees are sufficiently secured by

the Republic Shagbark mortgage, whether Republic is an oversecured creditor pursuant to 11 U.S.C. § 506(b) is immaterial.

Accordingly,

**IT IS ORDERED** that the Bankruptcy Court's judgment in the adversary proceeding is **AFFIRMED**, and the Bankruptcy Court's order overruling and denying CCNB's motion to reconsider is **AFFIRMED**.

**IT IS FURTHER ORDERED** that CCNB's motion to amend (R. 4) is **GRANTED**.

A separate judgment will issue.

Signed on July 24, 2012

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY